## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. _____

SALIENT CRGT, INC.,
4000 Legato Road, Suite 600
Fairfax, VA 22033

        Plaintiff,

v.

MICHAEL CRANDALL,
4980 Iron Horse Trail
Colorado Springs, CO 80917

HOWARD ZACH,
3810 Schoolwood Court
Colorado Springs, CO 80918

AND

DIGITAL BEACHHEAD, INC.,
4980 Iron Horse Trail
Colorado Springs, CO 80917
SERVE:
    Adam L. Weitzel, Registered Agent
    90 S. Cascade Avenue, Suite 840
    Colorado Springs, CO 80903

        Defendants.
_____

## **COMPLAINT**
_____

Plaintiff Salient CRGT, Inc. ("Plaintiff" or "Salient"), by counsel, as and for its complaint against Defendants Michael Crandall ("Crandall"), Howard Zach ("Zach") and Digital Beachhead, Inc. ('DBI") (Crandall, Zach and DBI may be collectively referred to herein as "Defendants"), states and alleges as follows:

## PARTIES

1. Salient is a Maryland corporation with its headquarters at 4000 Legato Road, Suite 600, Fairfax, VA 22033. Salient is in the business of providing a broad range of information technology services to government and commercial entities. Salient was formed when Salient Federal Solutions, Inc. merged with CGRT, Inc. ("CRGT") on or about September 11, 2015.

2. Crandall is a former employee of Salient. He is a resident of the State of Colorado.

3. Zach is a former employee of Salient. He is a resident of the State of Colorado.

4. DBI is a Colorado corporation with its headquarters located at 4980 Iron Horse Trail, Colorado Springs, CO 80917. DBI is in the business of providing information technology services and is a direct competitor of Salient.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. Section 1332(a)(1), because the matter in controversy exceeds $75,000.00, exclusive of interest and costs, and is between citizens of different states (i.e., complete diversity of citizenship exists between Salient and Defendants).

6. This Court has personal jurisdiction over Defendants because all of the Defendants are present in Colorado.

7. Venue is proper in this Court pursuant to 28 U.S.C. Section 1391(b)(1) because Defendants Crandall and Zach reside in this District and all Defendants are residents of the State of Colorado.

## FACTS

### Defendant Crandall's Confidentiality Agreement

8. On March 11, 2012, Crandall entered into an Employee Confidentiality Agreement with CRGT (the "Crandall Employment Agreement"), a copy of which is attached hereto as Exhibit A.

9. Pursuant to the Crandall Employment Agreement, Crandall agreed to restrictions on his ability to disclose CRGT's Confidential Information and agreed not to solicit certain business or employees, as further set forth in Sections 1 and 2 of that Agreement.

### Defendant Zach's Confidentiality Agreement

10. On March 21, 2012, Zach and CRGT entered into a Management Confidentiality Agreement (the "Zach Confidentiality Agreement"), a copy of which attached hereto as Exhibit B.

11. Pursuant to the Zach Confidentiality Agreement, Zach agreed to restrictions on his ability to disclose CRGT's Confidential Information and agreed not to solicit certain business or be employed by businesses competing with CRGT, as further set forth in Sections 1 and 2 of that Agreement.

12. On October 24, 2014, Zach and CRGT entered into a Retention Bonus Agreement (the "Zach Retention Bonus Agreement"), a copy of which is attached hereto as Exhibit C. Pursuant to Paragraph 4 of the Zach Retention Bonus Agreement, Zach acknowledged that he would continue to comply with the Zach Confidentiality Agreement and that his entitlement to any severance compensation or benefits pursuant to the Zach Retention Bonus Agreement was subject to his continued compliance with the Zach Confidentiality Agreement.

13. Pursuant to Paragraph 6 of the Zach Retention Bonus Agreement, Zach acknowledged that any breach by him of the terms of Paragraph 4 would entitle CRGT to injunctive relief and damages.

14. On October 30, 2014, Zach and CRGT accepted the terms of an employment offer by CRGT (the "Offer Letter"), and also on that date entered into a Management Confidentiality Agreement (the "2014 Zach Confidentiality Agreement") that was Exhibit A to that Offer Letter. A copy of the Offer Letter and 2014 Zach Confidentiality Agreement is attached hereto as Exhibit D. The terms of the 2014 Zach Confidentiality Agreement are the same as those in the Zach Confidentiality Agreement.

15. Crandall and Zach each had access in the course of their employment by CRGT to confidential information and trade secrets belonging to CRGT, including information concerning or constituting operational strategies and plans; pricing and bidding plans, customer requirements, preferences, and plans, and CRGT's ability, strategies, and plans to satisfy or respond to same; business leads and prospective customers; strategies and plans for performing, selling, and promoting CRGT's services and developing, selling, and promoting its products; CRGT's personnel's training, experience, skills, qualifications, tenure, and career plans, compensation and benefits, expectations and demands; and other confidential CRGT information.

### Crandall's and Zach's Work on the Yokota Program

16. The Yokota Program refers to a contract that Salient had with the United States Air Force ("USAF") and the Japanese Air Self Defense Force ("JASDF") pursuant to which Salient assisted USAF units with deployment, employment and redeployment planning prior to, during, and following aviation training with the JASDF, among other things. Crandall was the

4

Project Manager for the Yokota Program, and Zach was the executive responsible for the work on the program.

17. As a result of their work on the Yokota Program on behalf of CRGT, Crandall and Zach had access to and obtained information proprietary to CRGT, including but not limited to the services that CRGT provided to the USAF in connection with that Program; how CRGT managed those services; the names of the USAF employees serving as customer contacts; the names of the CRGT employees assigned to the Yokota project; the prices CRGT charged the USAF for its work; the direct labor costs, including each employee's salary, for CRGT employees on the project; CRGT's profits on the project; and how CRGT would bid on the "Recompete" (referred to in Paragraphs 31 – 34 below).

### Crandall's and Zach's Departure From CRGT and The Formation of DBI

18. On September 11, 2015, Crandall and CRGT entered into a Separation Agreement and Release (the "Crandall Separation Agreement"), a copy of which is attached hereto as Exhibit E.

19. Pursuant to Paragraph 5 of the Crandall Separation Agreement, Crandall acknowledged the continuing nature of his obligations under the Crandall Confidentiality Agreement.

20. Pursuant to Paragraph 9 of the Crandall Separation Agreement, Crandall agreed that the prevailing party in any action to enforce the terms of that Agreement "shall be entitled to receive its attorneys' fees and costs incurred in bringing such action."

21. Pursuant to the Crandall Separation Agreement CRGT agreed to pay, and did pay, Crandall the sum of $29,919.48.

22. On October 30, 2015, Crandall's employment with CRGT was terminated.

23. On October 7, 2015, Zach and CRGT entered into a Separation and Release Agreement (the "Zach Separation Agreement"), a copy of which is attached hereto as Exhibit F.

24. The 2014 Zach Confidentiality Agreement was incorporated into the Zach Separation Agreement, but the Zach Separation Agreement provided, in Paragraph 11, that the non-compete period set forth in the 2014 Zach Confidentiality Agreement was reduced to a period of six months following the date of Zach's termination of employment by CRGT, and that the scope of the non-compete provisions of the 2014 Zach Confidentiality Agreement was also limited as further set forth in that Paragraph.

25. Pursuant to the Zach Separation Agreement CRGT agreed to pay, and did provide Zach with consideration valued at $104,544.96.

26. Pursuant to Paragraph 11 of the Zach Separation Agreement, Zach agreed that his continued compliance with his obligations under the 2014 Zach Confidentiality Agreement, as modified, was a condition of his receiving the consideration per the Zach Separation Agreement.

27. On November 13, 2015, Zach's employment with CRGT was terminated.

28. On or about November 2, 2015, two days after Crandall's separation of employment from CRGT, Crandall incorporated DBI. Crandall had previously formed another company, Digital Beachhead, LLC, a Colorado limited liability company, but had voluntarily dissolved Digital Beachhead, LLC on or about October 15, 2015, shortly after he knew that he would be leaving CRGT's employment.

29. DBI engages in the same general business and targets the same client base as does Salient.

30. No later than November, 2015, Crandall solicited Zach to become employed by DBI.

### Salient and DBI Submit Competing
### Bids on the Yokota Program Recompete

31.     Prior to the expiration of Salient's work on the Yokota Program, the USAF solicited bids by companies seeking to work on the continuation of the Yokota Program (the "Recompete").

32.     Salient submitted its bid to USAF on that Recompete on or about March 24, 2016.

33.     DBI also submitted a bid on that Recompete, and DBI was the successful bidder.

34.     Crandall's and Zach's knowledge of CRGT's Confidential Information and trade secrets was so intertwined with their employment by CRGT that Defendants Crandall and Zach must inevitably have disclosed some of CRGT's Confidential Information and trade secrets to DBI in connection with DBI's bid on the Recompete.

### COUNT I
### Breach of Contract
### (Against Defendant Crandall)

35.     Plaintiff incorporates by reference all allegations contained in all preceding Paragraphs of this Complaint as though fully set forth herein.

36.     Crandall breached his obligations under both the Crandall Confidentiality Agreement and the Crandall Separation Agreement by: (i) soliciting the business of the U.S. Air Force concerning the Recompete; (ii) soliciting and employing Zach through Crandall's new company, DBI; and (iii) using CRGT's Confidential Information and trade secrets for the benefit of himself and DBI.

37.     As a result of Crandall's breaches as alleged above, Salient suffered damages in an amount to be proved at trial, but not less than $500,000.00.

## COUNT II
## Breach of Contract
### (Against Defendant Zach)

38. Plaintiff incorporates by reference all allegations contained in all preceding paragraphs of this Complaint as though fully set forth herein.

39. Shortly after his separation of employment with CRGT (if not earlier), Zach sought and obtained employment with DBI.

40. Zach breached the Zach Confidentiality Agreement and the Zach Separation Agreement by: (i) becoming employed by DBI; (ii) soliciting and obtaining the business of the USAF on behalf of DBI concerning the Recompete; and (iii) using CRGT's Confidential Information for the benefit of himself and DBI.

41. As a result of Zach's breaches as alleged above, Salient suffered damages in an amount to be proved at trial, but not less than $600,000.00.

## COUNT III
## Breach of Fiduciary Duty
### (Against Defendants Crandall and Zach)

42. Plaintiff incorporates by reference all allegations contained in all preceding paragraphs of this Complaint as though fully set forth herein.

43. As employees of CRGT Crandall and Zach owed fiduciary duties to CRGT, including the duties of loyalty and obedience.

44. By their conduct as alleged above Defendants breached their fiduciary duties to CRGT, as a result of which Salient has been damaged in an amount to be proved at trial, but not less than $475,000.00.

## COUNT IV
### Tortious Interference with Prospective Economic Advantage
### (Against All Defendants)

45. Plaintiff incorporates by reference all allegations contained in all preceding paragraphs of this Complaint as though fully set forth herein.

46. At the time of Crandall's and Zach's termination of their employment by CRGT, CRGT had an ongoing business relationship with the USAF concerning the Yokota Program, with the probability of future economic benefit from the continuation of its work through the Recompete.

47. Defendants knew of that business relationship and expectancy.

48. It was reasonably certain that, absent the interference of Defendants, Salient would have continued in the business relationship with the USAF concerning the Yokota Program, and would have realized the expectancy of the continuation of that relationship, through the Recompete.

49. Defendants' interference was both intentional, improper, and done by them through the use of wrongful means, including their wrongful misuse of CRGT's Confidential Information.

50. As a result of Defendants' intentional interference with its business relationship and expectancy concerning the Yokota Program and the Recompete, as alleged above, Salient suffered damages in an amount to be proved at trial, but not less than $475,000.00.

## COUNT V
### Conspiracy
### (Against Defendants Crandall and Zach)

51. Plaintiff incorporates by reference all allegations contained in all preceding paragraphs of this Complaint as though fully set forth herein.

52. Defendants, by their conduct, agreed to benefit themselves and their new employer, DBI, through unlawful means, including their breach of their fiduciary duties and tortious interference with prospective economic advantage as aforesaid, as a result of which Salient has been damaged in an amount to be proved at trial, but not less than $475,000.00.

### COUNT VI
### Misappropriation of Trade Secrets
(Colo. Rev. Stat. Section 7-74-104)
(Against Defendants Crandall and Zach)

53. Plaintiff incorporates by reference all allegations contained in all preceding paragraphs of this Complaint as though fully set forth herein.

54. Defendants Crandall and Zach misappropriated CRGT's confidential business and financial information through the use of improper means, including their breach of their fiduciary duties and unlawful conspiracy as aforesaid, and so misappropriated CRGT's trade secrets in violation of Colorado law, as a result of which Salient has been damaged in an amount to be proved at trial, but not less than $475,000.00.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff Salient requests that a judgment be entered in its favor on this Complaint, and awarding it the following relief against Defendants on the Counts that pertain to them:

1. An Order compelling Defendants to: (i) surrender and return all of Salient's confidential information and trade secrets, and all other documents or property of Salient; (ii) surrender and disclose all documents evidencing Defendants' use of Salient's confidential information and trade secrets; (iii) specifically account for Defendants' use and disclosure of Salient's confidential information and trade secrets; and (iv) disgorge any and all profits they

have received or will receive from their above-described actions, together with an order imposing a constructive trust in favor of Salient upon said unlawful profits.

2. Compensatory damages in an amount to be proved at trial regarding all Counts.

3. Salient's attorneys' fees concerning Crandall's breach of the Crandall Separation Agreement, as alleged in Count I, per that contract.

4. Punitive damages and attorneys fee to the extent permitted by law.

5. Pre- and post-judgment interest on all compensatory damages awarded.

6. Salient's allowable costs.

7. Such other and further relief deemed just and proper.

Dated: August 2, 2017                     Respectfully submitted,

 s/
Thomas C. Junker, Esq. (VSB No. 29928)
FISKE LAW GROUP, PLLC
100 N. Pitt Street, Suite 206
Alexandria, Virginia 22314
Telephone: (703) 518-9910
Fax: (703) 518-9931
Email:  tjunker@fiskelawgroup.com

Webster E. Cash, III, Esq.
WHEELER TRIGG O'DONNELL, LLP
370 17th Street, Suite 4500
Denver, Colorado 80202
Telephone:  (303) 244-1800
Fax:  (303) 244-1879
Email:  Cash@wtotrialcom

*Attorneys for Plaintiff Salient CRGT, Inc.*

11